UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
v.                             )        No.:   3:26-CR-30-TAV-JEM-3
                               )
CASEY DWIGHT BOWMAN,           )
                               )
            Defendant.         )

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendant's Motion for Revocation of Detention Order [Doc. 63]. Specifically, defendant moves the Court to revoke the Order of Detention [Doc. 59] entered by United States Magistrate Judge Jill E. McCook on May 12, 2026 [Doc. 63, p. 1]. The government filed a response in opposition [Doc. 71]. For the reasons discussed below, defendant's motion [Doc. 63] is **DENIED**.

## I.    Background

Defendant is charged with one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) (Count One), two counts of distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Counts Six and Twelve), three counts of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Counts Seven, Eleven, and Fourteen), one count of distribution of five grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count Ten), and one count of possession with intent to

distribute 5 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count Thirteen) [Doc. 61].[1]   On May 8, 2026, defendant moved for pretrial release [Sealed Doc. 55].  Accordingly, on May 11, 2026, the parties appeared before Judge McCook for a detention hearing, and after hearing proof and arguments, she took the matter under advisement [Doc. 56; *see* Doc. 80 (Transcript)].

After weighing the factors set forth in 18 U.S.C. § 3142(g), Judge McCook found that the government showed "by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community" [Doc. 59, p. 4].  In coming to such finding, Judge McCook relied on the nature and circumstances of the charged offenses, the weight of evidence of defendant's dangerousness, and the seriousness of danger to the community that would be posed by defendant's release [Doc. 59-1, pp. 1–3].  And while defendant proposed to be placed with his mother as a third-party custodian upon release, Judge McCook questioned the effectiveness of her serving as a third-party custodian [*Id.* at 3].  Specifically, defendant's mother testified that she was in regular contact with defendant while he was, by his own admission, a regular user of illicit substances [*Id.*].   Additionally, Judge McCook noted the ineffectiveness of GPS monitoring, house arrest, or home confinement given the allegations that defendant was dealing methamphetamine out of his residence [*Id.*].  Accordingly, Judge McCook ordered that defendant be detained pending trial [*Id.*].

---

[1]  The superseding indictment of this case [Doc. 61] was filed after Judge McCook issued the Order of Detention as to defendant [Doc. 59].  However, there were no changes to defendant's charges [*Compare* Doc. 3 *with* Doc. 61].

On May 21, 2026, defendant filed the instant motion, requesting that the Court revoke the Order of Detention [Doc. 63, p. 1]. Defendant relies on the arguments and proof presented at the detention hearing for his instant motion while emphasizing his tentative acceptance to Cornerstone of Recovery, an inpatient substance abuse treatment facility [*see* Doc. 63-1], his mother's offer to act as a third-party custodian, his connections to the community, and his lack of a felony or violent crime conviction [Doc. 63, pp. 1–3].

On June 3, 2026, the government responded in opposition [Doc. 71], arguing that the Magistrate Judge correctly concluded that defendant should be detained pending trial. The government reiterates its evidence of the charged offenses and notes that defendant has a history of substance abuse and a lack of unemployment [*Id.* at 1–2]. Ultimately, the government submits that the Magistrate Judge's ruling was "properly analyzed and supported by the evidence against [ ] defendant" [*Id.* at 2].

## II. Standard of Review

"If a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). A district court reviews *de novo* a magistrate judge's order of pretrial detention. *United States v. Blair*, No. 3:15-CR-56, 2015 WL 3486026, at *1 (E.D. Tenn. June 2, 2015) (citations omitted); *see also United States v. Marcrum*, 953 F. Supp. 2d 877, 880 (W.D. Tenn. 2013), *aff'd*, No. 13-6008 (6th Cir. Nov. 1, 2013). A second hearing is not required on a § 3145(b) motion, particularly where "the material information is already in the record from the initial detention hearing." *See United*

*States v. Walden*, No. 3:24-CR-19, 2024 WL 2121232, at *1 (E.D. Tenn. May 10, 2024) (citation omitted). Given defendant relies on the arguments and proof presented at the detention hearing, the Court does not find it necessary to hold a second hearing.

### III. Applicable Law

As relevant here, 18 U.S.C. § 3142(e)(3)(A)–(B) provides that:

Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed—

(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . ; [or]

(B) an offense under section 924(c) . . . of this title[.]

"This presumption leaves a defendant with the burden to produce evidence that they do not pose a danger to the community or a risk of flight." *United States v. Hughes*, 668 F. Supp. 3d 744, 747 (S.D. Ohio 2023) (citing *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)). Even if a defendant satisfies his burden to produce, which is not heavy, the presumption favoring detention still remains a factor to be considered among those weighed by the court. *Stone*, 608 F.3d at 945.

When reviewing a magistrate judge's detention order, the Court relies on the four factors set out in 18 U.S.C. § 3142(g):

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

4

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). "If, after a hearing[,] . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e). "The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004) (citation omitted).

## IV. Analysis

### A. Rebuttable Presumption

The Court begins with the rebuttable presumption in favor of detention. *See* 18 U.S.C. § 3142(e)(3). Given defendant's indictment, probable cause exists to conclude that he violated the Controlled Substances Act, specifically 21 U.S.C. §§ 841(a)(1) and 846,

5

and 18 U.S.C. § 924(c) [*See* Doc. 61]. *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (finding that an indictment "is sufficient to establish probable cause" for purposes of the rebuttable presumption); *Stone*, 608 F.3d at 945. And as to the Controlled Substances Act violations specifically (Counts One, Six, Ten, Twelve, and Thirteen), the penalty statutes prescribed for these offenses provide for a maximum term of imprisonment of over ten years. 18 U.S.C. § 3142(e)(3)(A); *see* 21 U.S.C. §§ 841(b)(1)(A), (B), (C). Therefore, all of defendant's offenses leave him facing the presumption of detention. 18 U.S.C. § 3142(e)(3)(A)–(B). Accordingly, defendant bears the burden to produce evidence showing he is not a risk of flight nor a danger to the community.

After review, the Court finds no reason to disagree with the Magistrate Judge's assessment that defendant rebutted the presumption [*See* Doc. 59-1, p. 1]. And it does not appear that the parties dispute this finding. Thus, the Court turns to the § 3142(g) factors to determine if defendant should be released, keeping in mind that the presumption remains a consideration. *See Stone*, 608 F.3d at 945.

### B. Section 3142(g) Factors

#### 1. Nature and Circumstances of the Offenses Charged

The nature and circumstances of the offenses charged favor detention. As stated previously, the indictment in this case charges defendant generally with conspiracy to distribute and possess with intent to distribute methamphetamine, distribution of methamphetamine, and possession of a firearm in furtherance of a drug trafficking offense. Notably, all of the offenses defendant has been charged with carry penalties of potentially

6

long periods of imprisonment, reflecting the seriousness of the crimes. *See* 21 U.S.C. § 841(b)(1)(A) (providing a penalty of "a term of imprisonment which may not be less than 10 years or more than life"); *id.* § 841(b)(1)(B) (providing a penalty of "a term of imprisonment which may not be less than 5 years and not more than 40 years"); *id.* § 841(b)(1)(C) (providing a penalty of "a term of imprisonment of not more than 20 years"); 18 U.S.C. § 924(c)(1)(A)(i) (providing a penalty of "a term of imprisonment of not less than 5 years" and up to life); *United States v. Dixson*, No. 20-1998, 2021 WL 1502723, at *1 (6th Cir. Mar. 22, 2021) (upholding detention of the defendant and agreeing with the district court that a 10-year term of incarceration "reflected the seriousness of the crime and 'increase[d] the likelihood of flight'").[2]   Additionally, crimes involving controlled substances and firearms are specific considerations under 18 U.S.C. § 3142(g)(1).

As to the circumstances surrounding these offenses,[3] the government proffered at the detention hearing that defendant "was involved in three controlled buys, which revealed the sale of over eighteen grams of methamphetamine" [Doc. 59-1, p. 1].  During the first

---

[2]   The Court would also note that any term of imprisonment imposed for a violation of 18 U.S.C. § 924(c) is to run consecutively with any other term of imprisonment imposed.  18 U.S.C. § 924(c)(1)(D)(ii).

[3]   The Court notes that "[n]othing in [§ 3142] shall be construed as modifying or limiting the presumption of innocence."  18 U.S.C. § 3142(j).  Indeed, "the § 3142(g) analysis is concerned with a practical assessment of the defendant's dangerousness, rather than an adjudication of guilt for a particular offense." *United States v. Tolbert*, No. 3:09-CR-56, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citing *Stone*, 608 F.3d at 948); *accord United States v. Boone*, No. 5:25-CR-127, 2025 WL 3033896, at *5 (E.D. Ky. Oct. 30, 2025) (noting that the Bail Reform Act "requires the Court to consider all allegations, both proven and unproven, in its calculus of the defendant's dangerousness").

controlled buy, which was at defendant's home, defendant sold the confidential informant approximately four grams of methamphetamine [Doc. 80, pp. 3–4]. A video of the controlled buy shows three firearms located over the television in defendant's home and one firearm located on the couch [*Id.*; Doc. 59-1, p. 1]. For the second controlled buy, defendant sold the confidential informant approximately 10.78 grams of methamphetamine [Doc. 80, p. 4]. During this transaction, defendant "wore a shoulder holster with two firearms while preparing the methamphetamine for sale" [Doc. 59-1, p. 1; *accord* Doc. 80, p. 4]. For the last controlled buy, defendant sold the confidential informant approximately four grams of methamphetamine [Doc. 80, p. 4]. While there were no firearms present during this transaction, a child was present in defendant's home [*Id.*; Doc. 59-1, p. 1]. Subsequent to these controlled buys, a search warrant was obtained for defendant's residence [Doc. 80, p. 5]. During the search of defendant's home, law enforcement uncovered three cell phones, which defendant claimed as his own, a bag containing 19 grams of marijuana and seven grams of marijuana, which defendant claimed as his own, six firearms, and a total of approximately 41.5 grams of methamphetamine [*Id.* at 5–6; Doc. 59-1, p. 1].

The Sixth Circuit has stated that "drug trafficking is a serious offense that, in itself, poses a danger to the community[]" and has noted its routine affirmation of, "on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Stone*, 608 F.3d at 947 n.6 (citations omitted). The possession of firearms in the context of drug trafficking is

equally as serious, if not more, as it only "escalates the level of danger associated with the offense." *United States v. Brooks*, 685 F. Supp. 3d 476, 479 (E.D. Mich. 2023); *accord United States v. Spalding*, No. 3:24-CR-118-BJB, 2025 WL 1969922, at *3 (W.D. Ky. July 16, 2025) ("[T]he alleged use of a firearm to facilitate trafficking adds the risk of gun violence.").

Accordingly, and after considering the nature and circumstances of defendant's alleged offenses set forth *supra*, the Court finds that this first factor weighs in favor of detention.

### 2. Weight of the Evidence

Next, the Court is to consider the weight of evidence against defendant. 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948 (citations omitted). The Court notes that "[t]his factor is somewhat duplicative of § 3142(g)(1) and (3) because, in considering a defendant's overall dangerousness, the Court must consider the facts of the crime alleged as well as evidence that the defendant has been dangerous in the past, such as criminal history[.]" *United States v. Burns*, No. 5:26-CR-2, 2026 WL 411732, at *5 (E.D. Ky. Feb. 9, 2026).

Again, defendant faces a number of drug trafficking charges, which are undeniably dangerous offenses. *See Stone*, 608 F.3d at 947 n.6 ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community."); *United States v. Taylor*, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) ("It is beyond dispute that distributing narcotics is a serious

9

offense that poses dire health risks to the community[.]”); *United States v. Davis*, No. 3:23-CR-78, 2023 WL 5111962, at *2 (E.D. Tenn. Aug. 9, 2023) (“Methamphetamine can be deadly[.]”); *United States v. Washington*, No. 3:22-CR-72, 2022 WL 17168604, at *3 (E.D. Tenn. Nov. 22, 2022) (citation omitted) (“Methamphetamine trafficking . . . presents a substantial risk to human life.”).  And as noted above, “[p]ossessing a firearm in furtherance of drug trafficking makes an already dangerous situation worse.” *Washington*, 2022 WL 17168604, at *3; *accord United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (“The Court finds the use and sale of drugs to establish significant danger.  The addition of guns to the equation only increases that danger.”).  Specifically, such possession “suggests a readiness to use or to engage in armed confrontations, heightening the risk to law enforcement, innocent bystanders, and potential rivals or competitors[.]” *Brooks*, 685 F. Supp. 3d at 479.

The Court would also emphasize, as specific to defendant’s particular case, the presence of a child during one of the controlled buys [Doc. 59-1, p. 1; Doc. 80, pp. 4–5]. Defendant’s willingness to put a child at risk while conducting a drug transaction only increases the weight of evidence of his dangerousness. *See United States v. Hughes*, 668 F. Supp. 3d 744, 749 (S.D. Ohio 2023) (“Defendant’s drug trafficking charges, and his alleged willingness to put children at risk while conducting these activities, favors detention[.]”); *United States v. Goodman*, No. 3:23-CR-96, 2023 WL 8461635, at *3 (W.D. Ky. Dec. 6, 2023) (“The [g]overnment also presented photographs of [the defendant] with his young child in the vehicle at one of the controlled-buy transactions. . . . Based on this

10

evidence, [the magistrate judge] reasonably found that [the defendant] poses a danger . . . to his young child in particular."); *United States v. Brown*, No. 3:17-CR-124-9, 2017 WL 3034691, at *2 (M.D. Tenn. July 18, 2017) (noting, in evaluating the weight of the evidence of dangerousness, the government's proffer of several drug transactions where controlled purchases were made from the defendant "at his residence near a school and in the presence of children").

Next, the Court looks to defendant's criminal history, as outlined in the United States Probation Office's ("USPO") Amended Pretrial Services Report ("PSR").[4] "In considering the § 3142(g) factors, the court may consider both actual convictions and mere arrests or indictments to assess the defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention." *Tolbert*, 2017 WL 6003075, at *5 (citations omitted). Defendant here has a relatively short criminal history. In 2002, when defendant was 18 years old, he was arrested for and pled guilty to failing to obey a traffic control device, simple possession, and driving while impaired [PSR, p. 3]. The sentence defendant was given for these offenses is unknown [*Id.*]. In 2010, defendant pled guilty to theft of property and was given an unknown sentence [*Id.*]. More recently, in 2022 and 2023, defendant was charged with "Attachment for Contempt/Non-Support" which appear to relate to a failure to pay child support [*Id.* at 4; *see id.* at 2 ("[Defendant] advised he is required to pay child support[.]"); Doc. 59-1, p. 2 ("[Defendant's] mother testified that

---

[4] The Court may reference the Pretrial Services Report in its *de novo* review of the Magistrate Judge's order of pretrial detention. *United States v. Carter*, No. 1:20-CR-62-1, 2021 WL 687858, at *2 (S.D. Ohio Feb. 23, 2021).

[defendant] does not have a license because he owes child support.")].  The disposition of these two offenses is unknown [PSR, p. 4].

Ultimately, the Court finds that the weight of the evidence of dangerousness here weighs in favor of detention.  While defendant does not have an extensive criminal history, the Court does not find that it outweighs the inherent dangerousness of defendant's offenses and the dangerousness demonstrated by allowing a child to be present during a drug transaction, as discussed *supra*.

### 3.     History and Characteristics of Defendant

Next, the Court turns to defendant's history and characteristics, specifically his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings[.]"  18 U.S.C. § 3142(g)(3)(A).[5]

Defendant is 42 years old and was born in Harriman, Tennessee [PSR, p. 2]. Defendant has been a lifelong resident of the East Tennessee [PSR, p. 1; *see* Doc. 80, p. 9]. Defendant's mother, Rebecca Bowman, lives in Rockwood, Tennessee, with her husband, defendant's stepfather [PSR, p. 2].  Defendant has one sister who resides in Roane County, Tennessee, and he has an adopted brother with whom he does not have contact [*Id.*]. Defendant has never married, but he has three children, two adults and one minor [*Id.*]. Defendant advised the USPO that he is required to pay child support, but "he currently

---

[5]  The Court does not find § 3142(g)(3)(B) to be applicable in defendant's case.

12

Case 3:26-cr-00030-TAV-JEM     Document 87     Filed 07/21/26     Page 12 of 18
PageID #: 329

does not know how much he owes in child support arrearage" [*Id.*]. However, on defendant's Financial Affidavit ("FA"), he submits that he owes at least $580 [FA, p. 1].

As to education, defendant attended school until the ninth grade, and he does not possess a General Educational Development diploma [PSR, p. 2]. Defendant reports being unemployed for the last eight years, providing that he has been attempting to obtain disability benefits due to his mental health problems [*Id.*]. Defendant's last form of employment was with TWT Ironworking in Atlanta, Georgia, approximately eight years ago [*Id.*]. Defendant reports no income, no assets, and no debt [FA, p. 1].

As to his physical health, defendant cites to relatively minor medical issues [PSR, p. 2]. As to his mental health, defendant states that he suffers from various mental and emotional health problems including Paranoid Schizophrenia, Bipolar Disorder with suicidal tendencies, Obsessive Compulsive Disorder, Manic Depressive Disorder, and Attention Deficit Hyperactivity Disorder ("ADHD") [*Id.*]. Defendant provides that he was hospitalized when he was 19 years old and prescribed medication [*Id.*]. Defendant reports that he has been unmedicated for approximately 10 years [*Id.*]. Defendant's mother states that defendant's previous medications for Paranoid Schizophrenia were not effective [*Id.*].

Regarding substance abuse, defendant admits to first using marijuana at age 13 and continuing to use marijuana daily until approximately two years ago [*Id.* at 3]. At age 15, defendant consumed alcohol for the first time, and he continues to occasionally drink alcohol [*Id.*]. From age 17 up until 2 days before his arrest, defendant was regularly using methamphetamine [*Id.*]. Defendant also states that he was previously a regular user of

13

cocaine, heroin, and prescription opiates, but he has not used these substances in approximately two years [*Id.*]. Defendant advised the USPO that he attended substance abuse treatment approximately one year ago wherein he was prescribed Sublocade [*Id.*]. As discussed previously, defendant does not have a lengthy criminal history [*Id.* at 3–4]. Additionally, defendant has no history of failing to appear.

At the detention hearing, defendant's mother, Ms. Bowman, testified [Doc. 59-1, pp. 2–3; Doc. 80, pp. 8–18]. Ms. Bowman described defendant as kindhearted, generous, and fun-loving, and she discussed how defendant previously helped care for his grandmother until her passing two years ago [Doc. 80, pp. 10–11, 13]. Ms. Bowman testified that she has never observed dangerous behavior from defendant, and that he is not a violent person [*Id.* at 11, 14]. Ms. Bowman did note, however, that defendant has had mental health issues for a long time [*Id.* at 11]. In particular, she noted that defendant suffers from social anxiety, and consequently, he prefers to stay at home [*Id.* at 11, 14]. Ms. Bowman also stated that defendant has no car and cannot drive because he does not have a license due to him owing child support [*Id.* at 12, 14].

When asked if she was aware that her son was having issues with substance abuse, Ms. Bowman stated that she "kind of" knew, but she also acknowledged some denial of it [*Id.* at 12]. Ms. Bowman also testified that, even when stopping by randomly, she had never smelled marijuana at defendant's house or seen drugs or drug paraphernalia [*Id.* at 17–18].

Jessica Tarwater, the mother of one of defendant's children and a long-time friend, also testified at the detention hearing [*Id.* at 19–23]. Like defendant's mother, Ms. Tarwater stated that she had never seen any dangerous or violent behavior from defendant [*Id.* at 20]. She described defendant as "having a good heart" and as a "homebody" [*Id.*]. Ms. Tarwater stated that whenever she would visit defendant's home, she never smelled marijuana, never saw any drugs or drug paraphernalia, and never saw any firearms [*Id.* at 21–22]. Additionally, she provided that she never saw defendant under the influence during her visits [*Id.* at 23]. Ms. Tarwater further testified that, during the six or seven years she and defendant lived together, she never saw him use drugs [*Id.* at 22].

The Court acknowledges that some of defendant's history and characteristics favor his release, specifically his ties to his friends and family and his long-standing connection to East Tennessee.[6] However, the strength of defendant's family and community support is somewhat undercut by the implicit evidence that defendant actively concealed his substance abuse issue from his mother and Ms. Tarwater, who lived with defendant for years [*See* Doc. 80, p. 22] Specifically, Ms. Bowman and Ms. Tarwater both testified that they never smelled marijuana in defendant's home, never saw drugs in defendant's home, and never saw drug paraphernalia in defendant's home [*Id.* at 17–18, 21–23]. Moreover, Ms. Tarwater stated that, during her time of living with defendant, she never saw him use drugs [*Id.* at 22]. Despite all of this, defendant informed the USPO that he was a daily

---

[6] The Court is also in receipt of defendant's letter from Ms. Shirley Briggs [*see* Doc. 57], who discusses defendant's character and mental health struggles.

user of marijuana since the age of 13 and a regular user of methamphetamine since the age of 17 [PSR, p. 3]. From this, the Court can infer that defendant hid his substance abuse issues from those closest to him, a fact that supports defendant's detention in this matter. *See United States v. Smith*, No. 14-20814, 2020 WL 5071176, at *3 (E.D. Mich. Aug. 26, 2020) (noting that the defendant's ability to hide his conduct from his wife makes it easier for him to reoffend).

And to this same point, defendant's substance abuse issues, as well as his lengthy term of unemployment, weigh in favor of defendant's detention. *See United States v. Taylor*, 449 F. Supp. 3d 668, 674 (E.D. Ky. 2020) (finding the defendant's unemployed status and his "substantial daily substance use disorder for heroin" to favor detention); *United States v. Stidham*, No. 3:10-CR-79, 2010 WL 2639925, at *3 (E.D. Tenn. June 25, 2010) ("It has been the Court's long experience that employed defendants are much less likely to violate the terms of their pretrial release orders than are unemployed defendants.").

Considering all the above, the Court finds, on balance, that this factor weighs slightly in favor of defendant's detention.

### 4. Nature and Seriousness of the Danger Posed by Defendant's Release

The final factor under § 3142(g), "the nature and seriousness of the danger to any person or the community that would be posed by the person's release[,]" weighs in favor of detention, especially in light of the presumption. 18 U.S.C. § 3142(g)(4); *see United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) ("The court may continue to give the presumption some weight by keeping in mind that Congress has determined 'that drug

16

offenders pose a special risk of flight and dangerousness to society.'" (quoting *United States v. Hare*, 873 F.2d 796, 798–99 (5th Cir. 1989))). Specifically, and as reiterated several times throughout this Memorandum Opinion and Order, drug trafficking is a serious and dangerous offense. *Stone*, 609 F.3d at 947 n.6. And the danger inherent in drug trafficking is only heightened by the addition of firearms. *Brooks*, 685 F. Supp. 3d at 479.

While the Court does consider defendant's mother, Ms. Bowman, who defendant offered as a third-party custodian if he were to be released, the Court has the same concerns about her ability to serve as a custodian as those expressed by the Magistrate Judge. Namely, Ms. Bowman was in regular contact with defendant while he was a regular user of methamphetamine as well as other controlled substances [*See* Doc. 59-1, p. 3]. Furthermore, as discussed *supra*, defendant has demonstrated an ability to hide his substance abuse, concealing his usage to even those with whom he resides.

The Court has also considered defendant's tentative acceptance to an inpatient program [*See* Doc. 63-1]. While defendant's pursuit of treatment is recognized, the Court must weigh this present willingness with defendant's previous substance abuse treatment [PSR, p. 3] and the other § 3142(g) factors. *See Spalding*, 2025 WL 1969922, at *4 (noting that the defendant's "recent pursuit of treatment may indicate a willingness to change" but ultimately concluding that the acute danger of the defendant's offenses, which involved drug trafficking while armed, supported pretrial detention). Finally, as noted by the Magistrate Judge and as the Court agrees here, GPS monitoring, house arrest, and house

confinement would all be ineffective considering defendant is alleged to have been dealing methamphetamine out of his home [*See* Doc. 59-1, p. 3].

Taking all of this into consideration, the Court finds that this final factor weighs in favor of detention.

## V.  Conclusion

Ultimately, the nature and circumstances of the offense, the weight of the evidence, the history and characteristics of defendant, and the nature and seriousness of the danger to the community all weigh in favor of defendant's continued pretrial detention.  The Court is convinced that no condition or combination of conditions for release would reasonably assure the safety of the community.  Accordingly, defendant's motion [Doc. 63] is hereby **DENIED**.  Defendant shall remain detained pending trial.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

18